J-S32015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN E. SIMMINGER | : | |
| | : | |
| Appellant | : | No. 1688 EDA 2018 |

Appeal from the Judgment of Sentence Entered January 22, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003208-2016

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 21, 2019**

Appellant, Steven E. Simminger, appeals from the January 22, 2018

judgment of sentence following his conviction by a jury of first-degree murder

and possessing an instrument of crime ("PIC").[1]  We affirm.

The trial court summarized the facts of the case as follows:

In the early morning hours of March 13, 2016, Sean Boyd,
Colin McGovern, Casey Walsh and Gabby DiFrancesco were
walking around Rittenhouse Square in center city Philadelphia,
looking for a place to crash for the night. (N.T. 11-14-2017, pp.
75-77).  [Appellant] was roaming the same streets.  When
[Appellant] and the four's paths crossed, Boyd made a snide
remark about the Jersey Devils' hat [Appellant] was wearing.
(N.T. 11-14-2017, pp. 77-79; 11-16-2017, pp. 5-8).  An
argument ensued.  An unarmed Boyd and McGovern approached
[Appellant].  [Appellant] took a knife out of his right coat pocket.
As McGovern got closer, [Appellant] lunged, stabbing McGovern
in the stomach.  [Appellant] then lunged and slashed at Boyd but
missed.  McGovern then grabbed [Appellant] and both landed on

_____

[1]  18 Pa.C.S. §§ 2502 and 907, respectively

the ground, wrestling, with McGovern ending up on top. Again, [Appellant] stabbed the unarmed McGovern, this time in the heart. Boyd pulled McGovern away and the two got several steps away before McGovern collapsed from his wounds and soon died. [Appellant] fled, returning to get his hat and another object before again fleeing. (N.T. 11-14-2017, pp. 80-85; 11-15-2017, pp. 26-32; 11-16-2017, pp. 9-10). [Appellant] went home to New Jersey, returning to Philadelphia the next morning to the Veteran's Administration Hospital for treatment of a cut to his hand. (N.T. 11-14-2017, pp. 144-148). The police were eventually called, [Appellant] arrested, and found among his possessions were two knives. His clothes were soaked with Colin McGovern's blood, as was one of the two knives. (N.T. 11-14-2017, pp. 139-142). l[Appellant's] cell phone displayed texts in which [Appellant] revealed that "he likes stabbing," stating that stabbing "Is a rush," "Is satisfying" and "Is what mother-fuckers deserve when they bother me." (N.T. 11-15-2017, pp. 44-47).

Trial Court Opinion, 8/8/18, at 3–4.

The trial court summarized the procedural history as follows:

On March 13, 2016, [Appellant] was arrested and charged with murder and possessing an instrument of crime. [Appellant] was bound over for trial on all charges following a March 30, 2016 preliminary hearing. A motion to quash was heard and denied on June 2, 2016. A Suppression Hearing was held and denied on August 31, 2017, with trial commencing November 22, 2017. A jury convicted [Appellant] of first degree murder and possessing the instrument of a crime[.] . . . [Appellant] was subsequently sentenced to life without the possibility of parole plus two and a half to five years' incarceration.[2] [Appellant] timely filed a notice of appeal.

Trial Court Opinion, 8/8/18, at 1–2. Both Appellant and the trial court

complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

---

[2] Appellant filed a post-sentence motion on January 26, 2018, which was denied by operation of law on May 29, 2018.

- 2 -

     I.     Did the trial court incorrectly conclude that the fact-finder's determination that Appellant had the specific intent to commit the crime of first-degree murder was not against the clear weight of the evidence?

     II.    Was the evidence presented at trial sufficient to support Appellant's convictions for first-degree murder and possessing an instrument of crime where the evidence established that appellant lacked the requisite specific intent to kill necessary to sustain his convictions?

     III.   Did the trial court err in denying Appel[l]ant's motion to suppress all evidence recovered from his cell phone where the search warrant for the phone failed to describe with particularity the items to be seized and therefore was unconstitutionally overbroad?

     IV.   Did the trial court abuse its discretion in admitting evidence of Appellant's prior arrest for an unrelated shooting where the probative value of the evidence was outweighed by the potential for unfair prejudice?

Appellant's Brief at 5 (unnecessary capitalization omitted).

We first address Appellant's second issue because a successful sufficiency-of-the-evidence claim requires discharge.[3] **Commonwealth v. Mikitiuk**, ___ A.3d ___, ___, 2019 PA Super 195, *7 (Pa. Super. filed June 20, 2019). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict

---

[3] In setting forth this allegation in his post-sentence motion, Appellant erroneously sought "a new trial based on" the sufficiency of the evidence. Rather, as noted above, a successful sufficiency-of-the-evidence claim requires discharge. **Commonwealth v. Toritto**, 67 A.3d 29, 33 (Pa. Super. 2013) ("Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first.").

winner, were sufficient to prove every element of the offense beyond a reasonable doubt. **Commonwealth v. Diamond**, 83 A.3d 119 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Colon-Plaza**, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting **Commonwealth v. Robertson-Dewar**, 829 A.2d 1207, 1211 (Pa. Super. 2003)). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. **Commonwealth v. Tejada**, 107 A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. **Commonwealth v. Mucci**, 143 A.3d 399, 409 (Pa. Super. 2016). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. **Commonwealth v. Rogal**, 120 A.3d 994 (Pa. Super. 2015).

As a preliminary matter, we must consider whether Appellant has preserved this issue for appellate review. In his post-sentence motion, Appellant generically alleged, "The evidence presented at trial was insufficient to sustain a conviction on all counts." Post-Sentence Motion, 1/26/18, at ¶ 3(a). Under Pennsylvania Rule of Criminal Procedure 720, Appellant was required to set forth any claims he sought to raise with "specificity and particularity." Pa.R.Crim.P. 720(B)(1)(a).

In his Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Appellant stated, "Was the evidence presented at trial insufficient to sustain a conviction on all counts . . . ?" Statement of Matters Complained of on Appeal, 6/23/18, at ¶2. An appellant's Pa.R.A.P. 1925(b) statement must state with specificity the element or elements upon which he alleges that the evidence was insufficient. ***Commonwealth v. Stiles***, 143 A.3d 968, 982 (Pa. Super. 2016); ***see also*** Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). The failure to identify the specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. ***See Commonwealth v. Tyack***, 128 A.3d 254, 261 (Pa. Super. 2015) (finding the appellant's issues waived where "1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

Appellant's nonspecific claim challenging the sufficiency of the evidence, which fails to state any elements of any crimes allegedly not proven by the Commonwealth, is waived. ***Tyack***, 128 A.3d at 261. We note that in his "Statement of the Questions Involved," Appellant, for the first time, contends that the evidence at trial was insufficient to support his convictions for first-degree murder and PIC where the evidence established that appellant lacked

the requisite specific intent to kill. Appellant's Brief at 5. Appellant asserts that the evidence, at most, established that he committed manslaughter pursuant to 18 Pa.C.S. § 2503 because he "believed he was justified in defending himself against what he perceived as an imminent violent attack." Appellant's Brief at 18. Such a contention, as described by the Commonwealth, "is a non-sequitur," as Section 2503(b) applies to certain killings because they were committed without **malice**, not because "the perpetrator lacked the specific intent to kill." Commonwealth's Brief at 9.

An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. §§ 2501, 2502(a), (d). To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill. ***Commonwealth v. Ballard***, 80 A.3d 380, 390 (Pa. 2013). A jury may infer the intent to kill "based on the accused's use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011).

We conclude that even if not waived, we would rely upon the trial court's analysis in its Pa.R.A.P. 1925(a) opinion and find the issue lacking in merit. After setting forth the relevant standard of review, the trial court stated:

> The jury found that [Appellant] intentionally and with premeditation stabbed Colin McGovern with a knife that he had

been carrying with him.  When an argument broke out concerning [Appellant's] Jersey Devils' hat, [Appellant] pulled out his knife.  When McGovern approached [Appellant], [Appellant] stabbed McGovern in the stomach.  Neither [McGovern] nor Boyd were armed.  [Appellant] then attempted to stab Boyd, but Boyd was not within the reach of the knife.  [Appellant] then returned his attention to McGovern and as the two struggled they landed on the ground with McGovern on top.  At that point, although McGovern did not possess a weapon, [Appellant] again stabs McGovern in the chest, this time in the heart.  When combined with the text messages about how [Appellant] liked stabbing people and that it gave him a rush, the jury had more than enough evidence to find that [Appellant] possessed the requisite intent to kill when he stabbed McGovern, causing his death.  First degree murder is a murder in which the perpetrator has the specific intent to kill.  18 Pa.C.S §2502.  This killing was willful, deliberate and premeditated.  The specific intent to kill needed for first degree murder can be discerned from the conduct and attending circumstances, showing the perpetrator's state of mind. *Commonwealth v. Stewart*, 461 Pa. 274, 336 A.2d 282 (1976); *Commonwealth v. Gonzalez*, 858 A.2d 1219 (Pa.Super.2004); *Commonwealth v. Kaster*, 300 Pa. Super. 174, 446 A.2d 287 (1982).  [Appellant] used a deadly weapon on a vital part of the unarmed victim's body, clearly circumstantial evidence of [Appellant's] intent to kill.  *See Commonwealth v. Drum*, 58 Pa. 9 (1868); *Commonwealth v. Robinson*, 468 Pa. 574, 364 A.2d 665 (Pa. 1976); *Commonwealth v. 0'Searo*, 466 Pa. 224, 352 A.2d 30 (Pa. 1976).

Likewise, [Appellant] clearly of possessed an instrument of crime "with intent to employ it criminally" as defined under 18 Pa.C.S. § 907(a).  He possessed a knife that he used for criminal purposes under circumstances not manifestly appropriate for the lawful uses it may have had.  Accordingly, [Appellant's] claim of insufficiency of the evidence must fail.

Trial Court Opinion, 8/8/18, at 5–6.  Thus, even if not waived, the evidence presented and the inference drawn from Appellant's use of a deadly weapon on vital parts of the victim's body support the first-degree murder conviction. Therefore, we would conclude that Appellant's sufficiency claim lacks merit.

Appellant also challenges the weight of the evidence, again in generic fashion. We have held that a motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted). A trial court's determination that a verdict was not against the interest of justice is "[o]ne of the least assailable reasons" for denying a new trial. *Commonwealth v. Colon–Plaza*, 136 A.3d 521, 529 (Pa. Super. 2016) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting *Widmer*, 744 A.2d at 751–752). "[W]e do not reach

the underlying question of whether the verdict was, in fact, against the weight of the evidence.... Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion[.]" ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).

A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." ***Commonwealth v. Akrie***, 159 A.3d 982, 989 (Pa. Super. 2017). In his post-sentence motion, Appellant contended, "The verdicts were against the clear weight of the evidence." Post-Sentence Motion, 1/26/18, at ¶ 2(b). Appellant raised the issue in his Pa.R.A.P. 1925(b) statement, as well.

Instantly, the trial court, who viewed the witnesses' demeanors at trial, determined that the verdict did not shock his sense of justice. In addressing the weight of the evidence, the trial court stated:

> The evidence in this case was both compelling and substantial. The entire incident was caught on surveillance video. [Appellant] was wandering the streets of Philadelphia in the early morning hours, knives in his pocket. He texted his sister that he liked stabbing people, that it gave him a rush, especially those people who annoyed him. When two young men were walking down the street with two girls, and one of the men made a caustic remark about the hat [Appellant] was wearing, they were annoying him. An argument ensued. The two men were unarmed, but [Appellant] pulled out his knife. When McGovern approached, [Appellant] lunged at him with the knife, stabbing his victim in the stomach. [Appellant] then lunged at the other male trying to stab him. [Appellant] returned to his original victim and when they landed on the ground, [Appellant] again stabbed the

unarmed man, this time in the heart. The verdict in this case was not so contrary to the evidence as to shock one's sense of justice and therefore, the judgment must stand.

Trial Court Opinion, 8/8/18, at 6–7. We ascertain no abuse of discretion in this determination and add the following.

Appellant maintains that he had been diagnosed in the past with various disorders by the Veterans Administration and prescribed an anti-psychotic medication. Appellant's Brief at 15 (citing N.T., 11/17/17, at 57–58, 66–67, 70). The Commonwealth's expert witness, Dr. John O'Brien, a psychiatrist for over twenty years who has been qualified as an expert approximately seven hundred times, n.t. 11/20/17, at 13-14, reviewed Appellant's medical records dating back to the 1990s and interviewed Appellant in prison. N.T., 11/20/17, at 15–17. Dr. O'Brien determined that Appellant was manipulative and exaggerated his mental health symptom to obtain benefits, a conclusion that was underscored by a personality test that Appellant's own psychiatric expert, Dr. Frank M. Dattilio, had recently administered. *Id.* at 19–23. Appellant suggests that Dr. O'Brien's testimony "was so incredible that the fact-finder should have rejected it outright." Appellant's Brief at 13. Appellant's argument is nothing more than a veiled attempt to have this Court re-weigh the evidence and substitute our judgment for that of the jury, which is wholly improper. *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011). As we stated in *Commonwealth v. Jenkins*, 578 A.2d 960 (Pa. Super. 1990), "[t]he jury was free to accept all, some or none of the testimony presented.

- 10 -

The fact that [it] chose to believe Dr. O'Brien does not shock this Court's sense of justice." ***Id.*** at 963 (internal citations omitted). Having reviewed the record in its entirety, we discern no abuse of discretion with respect to the trial court's rejection of Appellant's weight-of-the-evidence claim.

Appellant next argues that the trial court erred in denying his motion to suppress the evidence recovered from Appellant's cell phone. Appellant's Brief at 23. Appellant filed a motion to suppress on January 21, 2017. The trial court held a hearing on August 31, 2017, and denied the motion at the conclusion of the hearing. N.T. (Suppression), 8/31/17, at 59. In his appellate brief, Appellant contends that "because the search warrant[4] did not limit the search of his cell phone to the relevant time period surrounding the crime . . . the warrant was unconstitutionally overbroad." Appellant's Brief at 24.

The standard of review an appellate court applies when considering an order denying a suppression motion is well settled:

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

---

[4] Neither the search warrant nor the affidavit in support of the warrant is in the record certified to us on appeal. We note that "[t]he Rules of Appellate Procedure place the burden on the appellant to ensure that the record contains what is necessary to effectuate appellate review . . . ." ***Commonwealth v. Powell***, 956 A.2d 406, 423 (Pa. 2008)); ***see also*** Pa.R.A.P. 1921 note ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.").

- 11 -

> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

> Moreover, it is within the trial court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

*Commonwealth v. Soto*, 202 A.3d 80, 90 (Pa. Super. 2018), *appeal denied*, 207 A.3d 291 (Pa. 2019) (quoting *Commonwealth v. McCoy*, 154 A.3d 813, 815–816 (Pa. Super. 2017) (citations and brackets in original omitted)). Further, we view the record in the light most favorable to the Commonwealth as the prevailing party. *Commonwealth v. Price*, 203 A.3d 264, 269 (Pa. Super. 2019) (citing *Commonwealth v. Mathis*, 173 A.3d 699, 706 (Pa. 2017)). We may consider only the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085–1087 (Pa. 2013).

Appellant concedes that Detective Francis Graf "admittedly had probable cause to believe that [A]ppellant's phone"—which he was carrying at the time of the murder—"might be useful to the investigation into Mr. McGovern's death." Appellant's Brief at 25. Appellant admits that at the time the warrant issued, police were "aware that [Appellant] intended to assert an insanity/diminished capacity defense." *Id.* Thus, the contents of the cell phone would contain "useful information about [A]ppellant's mental state at or near the time of the killing" and "who [A]ppellant was speaking to in the

minutes preceding the stabbing or to see if [A]ppellant had communicated with anyone in the days leading up to the incident who might shed light on his mental condition at the time of the stabbing." *Id.* at 25–26. Despite this contention, Appellant argues the warrant was overly broad because it was not limited to data generated close in time to the murder. *Id.* at 26.

In the motion to suppress, however, Appellant asserted that the warrant "lack[ed] probable cause to support its issuance." Motion to Suppress, 1/21/17, at ¶ 5. Moreover, while Appellant's argument on appeal focuses on an alleged denial of Appellant's rights under the Pennsylvania Constitution, Appellant's Brief at 26–29, that claim was not presented to the trial court. *Id.*; N.T. (Suppression), 8/31/17, at 19–57. Therefore, that basis for his suppression argument is waived. **Commonwealth v. Bell**, ____ A.3d ____, 11 MAP 2018 at * (Pa. filed July 17, 2019) (Although the defendant's pretrial motion mentioned the Pennsylvania Constitution, his failure "to develop an argument that the Pennsylvania Constitution provided any independent grounds for relief" in the trial court resulted in waiver). **See also Commonwealth v. Dixon**, 997 A.2d 368, 376 (Pa. Super.2010) (*en banc*) (citing Pa.R.Crim.P. 581(D) (pretrial motion to suppress must "state specifically and with particularity the evidence to be suppressed and the facts and events in support); **Commonwealth v. Jones**, 193 A.3d 957, 964 (Pa. Super. 2018) (defendant was required to raise particular ground for suppression in pretrial motion); **Commonwealth v. Rosa**, 734 A.2d 412, 420

(Pa. Super. 1999) (because defendant failed to raise allegation that search was unconstitutional under the Pennsylvania Constitution to the trial court, Superior Court "would be justified in deeming the claim waived.").

The absence of the application for the search warrant and the affidavit of probable cause from the record further impedes our analysis of the suppression issue that **was** raised in the motion to suppress and touched upon in the appellate brief. For this reason, we rely on the trial court's explanation and reasoning presented in its Pa.R.A.P. 1925(a) opinion, as follows:

> Detective Francis Graf of the Homicide Division of the Philadelphia Police Department submitted an application for a search warrant to the Magisterial Judge with a supporting affidavit of probable cause. The detective extensively described what had been discovered at the murder scene, including the video evidence depicting the slaying as well as the [Appellant's] actions prior to the stabbing and the observation that [Appellant] was talking on his cellular phone immediately before the confrontation. Based on that affidavit of probable cause the prosecution sought a warrant to search and seize the [Appellant's] white Galaxy S5 Verizon cellular telephone IMEI 990004810987069 limited to "contact lists, call logs, messaging, photos, photo galleries and/or albums, downloads, videos, video logs and any other items of evidentiary value in furtherance of the investigation of the stabbing death of Colin McGovern on 3-13-16." The Magisterial Judge issued the requested warrant. It is clear that the Commonwealth established, by a preponderance of the evidence, that the search warrant for [Appellant's] cell phone was properly supported by probable cause and described the items to be seized with the requisite specificity. The affidavit included a detailed explanatory narrative which not only provided the requisite probable cause, but identified, as clearly as possible, the item to be searched.
>
> *Investigation completed*
>
> [Appellant] also complained that the investigation had been over in that [Appellant] had been arrested on March 14, 2016, and

as this application was not filed until November 16th it had to be a fishing expedition. Although a warrant cannot be issued upon stale information, the phone had been seized by the police at the time of the arrest and since the video of the killing showed [Appellant] on that phone immediately prior to the killing, probable cause existed to believe that the phone may have contained information connected to the criminal activity. See *Commonwealth v. Council*, 491 Pa. 434, 421 A.2d 623 (1980); *Commonwealth v. Montavo*, 439 Pa.Super. 216, 653 A.2d 700 (1995). A review of the affidavit of probable cause reveals that the search warrant sufficiently identified and limited the items to be searched and seized from [Appellant's] white Galaxy S5 Verizon cellular telephone IMEI 990004810987069 in furtherance of the investigation and stabbing death of Colin McGovern on 3-13-2016. *See Commonwealth v. Dougalewicz*, 113 A.3d 817, 827 (Pa.Super.2015).

[Appellant] further contends that between the time of [Appellant's] arrest on March 13, 2016, and the application for the search warrant on November 7, 2016, the cell phone had, at least been plugged in to power on the item and, although there was no successful log in, as the phone was password protected, such actions by the police amount to an attempt, albeit unsuccessful, to search the phone and that the resulting evidence, obtained with a warrant should be suppressed. Even if the powering on of the phone was an attempted illegal search, there was nothing obtained from these attempts and as such nothing to suppress. The law is clear that where evidence has been obtained, pursuant to an unlawful search or seizure, the proper remedy is the suppression and exclusion of the evidence obtained. *Commonwealth v. Dobbins*, 594 Pa. 71, 89, 934 A.2d1170, 1181(2007) (citing *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203, 205 (1994)). As nothing was obtained, there is nothing to suppress.

Trial Court Opinion, 8/8/18, at 8–10.

In his final issue, Appellant asserts the following:

During [A]ppellant's trial, the Commonwealth sought to introduce evidence that [A]ppellant had previously been arrested nearly twenty years previously for shooting an individual in 1999. The Commonwealth argued that evidence about this previous arrest was relevant and admissible because [A]ppellant's expert,

- 15 -

> Dr. [Frank] Dattilio, considered [A]ppellant's criminal history in evaluating his insanity and diminished capacity claims. Over [A]ppellant's objection, the trial court ruled that the Commonwealth could cross-examine Dr. Dattilio about all the facts and data he reviewed, including [A]ppellant's prior arrest and conviction. Appellant respectfully submits that the trial court erred in admitting this prior bad act into evidence where the evidence was not critical to the doctor's conclusions and the Commonwealth essentially used this evidence as propensity evidence to argue that [A]ppellant was acting in conformance with his violent character when he fatally stabbed the victim.

Appellant's Brief at 30. Appellant importantly fails to include citation to the record and the relevant notes of testimony where the above controversy occurred at trial. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014). For this reason, we could find the issue waived. *Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) (claims failing to advance developed argument or citation to supporting authorities and record are waived). However, the Commonwealth has directed us to the relevant place in the record; thus, we consider the issue.

In response, the Commonwealth asserts:

> [Appellant] litigated a motion to preclude the prosecution from questioning the expert witnesses about a matter discussed in their mental health reports. It concerned a prior incident in which he had allegedly acted in self-defense and been convicted of simple assault. At a hearing outside the presence of the jury, the prosecution called [its expert witness,] Dr. O'Brien[,] to the stand. He testified that the incident was relevant to the assessment of whether or not [Appellant] suffered from a psychiatric condition that affected his perception of danger (N.T. 11/17/17, 11-22). After carefully considering the issue, Judge

- 16 -

O'Keefe denied the defense motion, but noted that he would provide the jury with a cautionary instruction (id., 36).

Commonwealth's Brief at 13–14.

The trial court underscores that Appellant presented an insanity defense at trial. Prior to presentation of the testimony of defense expert, Dr. Dattilio, the trial court charged the jury as follows:

> I told you before there are certain witnesses who are expert witnesses and there are some who are going to be coming forward that may or may not be experts. But an expert witness is a person who has special knowledge or skill in some science, art, profession, occupation or subject that the witness acquired by training, education and experience. Because an expert has special skill, that is out of the ordinary knowledge or skill, he or she may be able to supply you jurors with specialized information, explanations and opinions that will help you decide the case.
>
> Regular witnesses are bound by two limitations that do not apply to an expert. First, regular witnesses can generally testify only to things that they personally perceive. Things that they saw and heard themselves. Second, regular witness are not allowed to express opinions about matters that require special knowledge or skill.
>
> By contrast, an expert is allowed to express an opinion about a matter that is within the area of his or her expertise. Furthermore, while an expert may base an opinion on things personally perceived, he or she may also base an opinion on factual information learned from other sources. **Remember, you jurors are the sole judges of the credibility and weight of all testimony**. The fact that the lawyers or I may refer to certain witnesses as experts and that the witnesses may have special knowledge or skill does not mean that their testimony and opinions are right.
>
> When you are determining the credibility and weight of an expert's testimony and opinions, consider all the factors that I have described earlier that are relevant to evaluating the testimony of any witness. You should also consider all other things bearing on credibility and weight including the training,

education, experience and ability of each expert. The factual information upon which he or she based the opinion. The source and reliability of that information. And the reasonableness of any explanation he or she gave to support the opinion.

Now, some of these experts or witnesses are going to give you an opinion. They are going to refer to certain facts that have not been presented from the witness stand except by the expert. **Because these facts have not been presented in evidence except through the expert's testimony, you should consider them for the limited purpose only of deciding whether to accept that expert's opinion. You should not consider those facts in any other way to your deliberations in this case because they have no bearing on the question of whether the defendant is guilty or not guilty except for the purpose I have just described to you.**

N.T., 11/17/17, at 37–40 (emphases added).

When Dr. O'Brien referred to the prior incident during his rebuttal testimony, the trial court again reinforced its prior warning:

Ladies and gentlemen, the doctor has given you an opinion. He's referring to certain facts that have not been presented from the witness stand except by the experts. They are describing in part a basis of their opinion. Because these facts have not been presented into evidence except for the expert's testimony, **you should consider them only for the limited purpose of deciding whether or not to accept the expert's opinion. You should not consider those facts in any other way in your deliberations in this case because they have no bearing on the question of whether defendant is guilty or not guilty of the crime** except for the purpose I have just described.

N.T., 11/20/17, at 42–43 (emphasis added).

Appellant maintains that the trial court erred when balancing "the probative value of such evidence against its prejudicial impact." Appellant's Brief at 31. We disagree. As noted by the trial court, "Pennsylvania Rule of Evidence 705 provides: 'If an expert states an opinion the expert must state

the facts or data on which the opinion is based.' Precedent clearly requires disclosure of the facts used by an expert in forming an opinion. *See Kozak v. Struth*, 515 Pa. 554, 560, 531 A.2d 420, 423 (1987)." Trial Court Opinion, 8/8/18, at 12. Furthermore, the trial court minimized any prejudice[5] by means of its instructions, which jurors are presumed to have followed. ***See Commonwealth v. Powell***, 171 A.3d 294, 304 (Pa. Super. 2017), *appeal denied*, 183 A.3d 975 (Pa. 2018) (citing ***Commonwealth v. Tyson***, 119 A.3d 353, 362 (Pa. Super. 2015) (noting "to alleviate the potential for unfair prejudice, the court can issue a cautionary instruction to the jury," and "jurors are presumed to follow the trial court's instructions.").

We "will not disturb a ruling on the admission of evidence 'unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.'" ***Price***, 203 A.3d at 271

_____

[5] Appellant also criticizes a portion of the Commonwealth's closing argument wherein the prosecutor indirectly referenced Appellant's 1999 shooting, and he asserts resulting prejudice. Appellant's Brief at 34, 35. First, this is a veiled attempt to raise an issue that has not been properly raised and preserved. ***See Samuel***, 102 A.3d at 1006 (Pa.R.A.P. 1006(a) provides that no question will be considered unless it is stated in the statement of questions or fairly suggested therein); Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). Second, Appellant failed to object to these remarks at the time of trial. N.T., 11/21/17, at 99–100; ***see also*** Pa.R.A.P 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); ***Commonwealth v. Storey***, 167 A.3d 750, 757 (Pa. Super. 2017) (failure to request cautionary instruction after objection was sustained waives claim of trial court error in failing to issue cautionary instruction).

(quoting ***Commonwealth v. Akrie***, 159 A.3d 982, 986-987 (Pa. Super. 2017)).  Moreover, "an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless." ***Commonwealth v. Yockey***, 158 A.3d 1246 (Pa. Super. 2017) (citing ***Commonwealth v. Chmiel***, 889 A.2d 501, 521 (Pa. 2005)).

We will not disturb this evidentiary ruling.  As the trial court determined, "As both experts had relied upon [Appellant's] recitation of the history of his life, including previous contacts with the law, those instances were properly admitted into evidence."  Trial Court Opinion, 8/8/18, at 12.  The cautionary instructions provided before the experts testified "were more than adequate" to dispel any prejudice.  ***Id.***  Accordingly, we reject this claim, as well.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/21/2019*