J-S33023-18

2019 PA Super 19

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARRYL PRICE | : | |
| | : | |
| Appellant | : | No. 599 EDA 2016 |

Appeal from the Judgment of Sentence December 30, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009035-2014

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

OPINION BY McLAUGHLIN, J.:                           **FILED JANUARY 28, 2019**

Darryl Price appeals from the judgment of sentence imposed following his convictions for possession of a firearm by a prohibited person, firearms not to be carried without a license, and possession of a firearm in the City of Philadelphia.[1] Price argues that the trial court erred in denying his pre-trial Motion to Suppress and in granting the Commonwealth's pre-trial Motion in Limine. We affirm.

Price was convicted of the above-listed offenses following a bench trial in 2015. Prior to trial, Price filed a Motion to Suppress Physical Evidence, claiming that he had been seized and searched without probable cause or reasonable suspicion. The trial court held a hearing on January 15, 2015, at

---

*   Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105, 6106, and 6108, respectively.

which the Commonwealth presented the testimony of Philadelphia Police Officer Kevin Klein.

Officer Klein testified that on the night of July 23, 2014,[2] he was working in an unmarked patrol vehicle with his partner, Officer Christopher Ficchi, when they received a radio broadcast to respond to the 5100 block of Willows Avenue. *See* N.T., 1/15/15, at 15-16. According to Officer Klein, who had been a Philadelphia Police Officer for seven years at the time of the hearing, violent crime is prevalent in that area. *Id.* at 13, 28-29. The radio broadcast reported that a black male, wearing a white T-shirt and gray shorts, was driving a silver Lexus with a license plate reading "GWL8569," and was carrying a firearm. *Id.* at 15-16, 29. Officer Klein indicated that the radio broadcast was the result of a 911 call. *Id.* at 30.

Officer Klein testified that he and Officer Ficchi arrived at the intersection of 51st Street and Willows Avenue within a minute of receiving the radio broadcast and saw a silver Lexus, facing westbound, stopped at a stop sign. *Id.* at 17-18. The Lexus proceeded through the intersection and past the unmarked police vehicle, which was stopped at the same intersection, facing eastbound. *Id.* at 18. As the Lexus passed the officers' car, Officer Klein observed that the driver was a black male, later identified as Price, who was wearing a white T-shirt. *Id.* Officer Klein also saw that the car had a license

_____

[2] According to the Notes of Testimony of the suppression hearing, Officer Klein testified that the incident occurred on July 23, 2013. However, all other documentation in the record, including the transcript of Officer Klein's trial testimony, indicates that Price was arrested on July 23, 2014.

plate reading "GWL8568," which Officer Klein noted differed by only one digit from the number provided by the radio broadcast. *Id.* The officers turned their vehicle around and followed the Lexus until it pulled into a parking spot. *Id.* at 18-19, 27. The officers stopped their vehicle and activated their lights. *Id.* at 19, 27.[3]

Officer Klein exited the police car and approached the passenger side of the Lexus. *Id.* at 19. The window was down, and Officer Klein could see that Price was wearing gray shorts in addition to wearing a white T-shirt. *Id.* Price had his hands on the steering wheel, and did not respond when Officer Klein asked if he was carrying a firearm. *Id.* Officer Klein walked to the driver's side of the Lexus, opened the door, and asked Price to step out. *Id.* at 20. Price stood up, and as he turned, Officer Klein could see that he had a large bulge in the stomach area of his waistband. *Id.* Officer Klein testified that in his experience, most individuals carry firearms in the waistband area. *Id.* at 14-15. Officer Klein told his partner that he observed the bulge, and they both grabbed Price's arms. *Id.* at 20. Officer Klein felt the bulge, and found that it felt like a hard metal object. *Id.* The officers handcuffed Price and removed from his waistband a Kel-Tec 9-millimeter gun. *Id.*

_____

[3] Officer Klein made a statement to police detectives approximately an hour after Price's arrest, in which he stated that after he and Officer Ficchi turned right on Malcolm Street, following the Lexus, they "activated the lights and [Price] pulled over and parked." *Id.* at 33-34. This discrepancy has no bearing on our analysis, as the parties agree that Price was effectively stopped once the police activated their lights, regardless of whether this occurred before or after Price pulled the Lexus into a parking spot.

As Officers Klein and Ficchi were arresting Price, they were approached by a woman named Rachel Clark, who told the officers that she had called 911 to report the gun. *Id.* at 21-22, 28. She pointed to Price and said, "[T]hat's him," and asked the officers if they had recovered the gun. *Id.* at 22. Officer Klein noted that Clark appeared to be standing out of Price's view, and initially appeared to be nervous, but was relieved once the officers told her they had obtained the firearm. *Id.* Clark informed the officers that she had called 911 because she observed Price "put an item in the trunk of the vehicle" and that "he loaded bullets into a brown bag and placed that item into the trunk of the vehicle." *Id.* Clark was taken to a police station, where she gave a statement.[4] *Id.* at 28. Despite Clark's appearance at Price's arrest, Officer Klein acknowledged that at the time he stopped Price, he was acting on the basis that the tip received by 911 was from an anonymous source. *Id.* at 29-30.

Officer Klein asked Price if he had any other bullets in the vehicle. *Id.* at 23. Price responded that there were bullets in the trunk, and gave Officer Klein written permission to retrieve them. *Id.* In the trunk, Officer Klein found a brown corduroy bag containing 41 live rounds of 9-millimeter ammunition, six blue latex gloves, and one pair of black leather gloves. *Id.*

Relying on *Navarette v. California*, 572 U.S. 393 (2014), the court found that the police had reasonable suspicion to stop Price based on the 911

---

[4] Clark's statement was not introduced as evidence at the hearing.

call.[5] The court explained that the 911 center in Philadelphia can "track [911 calls] if it's a landline," and that "they have caller ID if it's not a landline." N.T., 1/15/15, at 54. The court also noted that 911 callers have their voices recorded, and the police may be able to establish a 911 caller's identity through tracing and tracking systems, which minimize the possibility that a caller would be dishonest. *Id.* The court therefore determined that the 911 call was sufficiently reliable to support reasonable suspicion to justify stopping Price's car, and denied Price's Motion to Suppress.

Immediately preceding trial on September 18, 2015, the Commonwealth made an oral Motion in Limine to preclude testimony that Rachel Clark, who had called 911, and her nephew, Kevin White, burglarized Price's home several weeks after his arrest.[6] Price's attorney argued that testimony regarding the burglaries would corroborate Price's defense at trial— that Clark had framed him for the firearms charges. Price intended to testify that on the day of his arrest, he had been in a verbal dispute with Clark, and that Clark and White had been in possession of Price's car with an opportunity to plant the gun and ammunition there. Price also intended to testify that the

---

[5] While the trial court did not issue a Rule 1925(a) opinion explaining its ruling on Price's Motion to Suppress, the court explained its reasoning on the record pursuant to Pa.R.Crim.P. 581(I).

[6] Although the transcript of the hearing on the Motion in Limine does not make clear who Price intended to call as a witness to testify regarding the burglaries, the transcript from a mistrial in this case in June 2015 indicates that Price's sister was the intended witness. *See* N.T., 6/12/15, at 5.

- 5 -

police had recovered the gun from the door of his vehicle, where Clark and White had hidden it.

The trial court granted the Motion and precluded the testimony regarding the burglaries. In a Pa.R.A.P. 1925(a) opinion, the court explained that because "[t]he burglaries occurred approximately two and three weeks after the gun arrest," they did "nothing to show that [Price] possessed a gun or did not possess a gun at the time he was arrested," and the proposed testimony was therefore irrelevant to Price's guilt. Trial Court Opinion, filed January 19, 2018, at 3 (unpaginated)

Price proceeded to a non-jury trial. The Commonwealth presented the testimony of Officers Klein and Ficchi, who testified consistently with Officer Klein's suppression testimony. Price testified that Clark had been his girlfriend at the time of his arrest, and the two had had an argument at Clark's house that day. He also said that following the argument, Clark borrowed Price's car to go to a store, and when she returned, she asked Price to buy watermelon. Price testified that upon his return to Clark's house, he was arrested, and did not know about the presence of the gun in the door of his car until it was found by the police. *See* N.T., 9/18/15, at 45-51.

The court found Price guilty of the above offenses and thereafter sentenced him to a minimum of five to ten years' incarceration followed by five years' probation. Price filed a post-sentence motion, which was denied on January 25, 2016.

J-S33023-18

Price filed a timely notice of appeal on February 17, 2016,[7] and raises

the following issues:

I.    Did the lower court err in denying [Price]'s [M]otion to [S]uppress since the stop leading to his arrest was not supported by reasonable suspicion or probable cause since the stop was based on a description in an anonymous phone call that lacked the sufficient indicia of reliability required by [***Commonwealth***] ***v. Jackson***, 698 A.2d 571 ([Pa.] 1997) and its progeny?

---

[7] Price's appeal has been fraught with delay. On July 26, 2016, the trial court issued a Rule 1925(a) opinion deeming all issues waived for appeal due to Price's failure to file a timely Rule 1925(b) Statement of Matters Complained of on Appeal, which the court had ordered due within 21 days of Price's receipt of the transcripts of the court proceedings. ***See*** Pa.R.A.P. 1925. That same day (July 26, 2016), the transcripts were filed with the trial court, and Price filed a Rule 1925(b) statement. On November 22, 2016, this Court issued a *per curiam* order remanding the case for 60 days in order for the trial court to file a supplemental Rule 1925(a) opinion responsive to Price's issues.

Over a year later, on November 28, 2017, the trial judge who had presided over Price's trial and sentencing, but who had not decided either of the pre-trial issues raised on appeal, issued two documents requesting that the two judges who had decided the pre-trial motions file Rule 1925(a) opinions responsive to Price's appellate issues. Fulfilling that request, the trial judge who had granted the Commonwealth's Motion in Limine filed a Rule 1925(a) opinion on the trial court docket on January 19, 2018. On March 28, 2018, this Court issued another *per curiam* order directing the trial court to file a supplemental Rule 1925(a) opinion within 30 days. On April 3, 2018, the trial judge who had tried and sentenced Price issued a Rule 1925(a) opinion that did not address the issues and instead stated that both of the issues on appeal had been decided by other judges. The certified record was thereafter transmitted to this Court. As no transcripts were included with the certified record, we issued yet another *per curiam* order on June 12, 2018, requesting that the trial court supplement the record with the appropriate transcripts within 15 days. On July 3, 2018, the trial court supplemented the certified record with the necessary transcripts.

II. Did the lower court err in granting the Commonwealth's [M]otion in [L]imine to exclude evidence relating to the subsequent burglary of [Price]'s residence by Rachel Clark?

Price's Br. at 3 (suggested answers omitted).[8]

## I. Motion to Suppress

Price first argues that the trial court erred in denying his Motion to Suppress because the anonymous call received by the police was insufficient to support reasonable suspicion to justify stopping Price's vehicle.

Our standard of review on appeal of the denial of a motion to suppress is "to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011) (citation omitted). If the record supports the factual findings of the suppression court, we reverse "only if there is an error in the legal conclusions drawn from those factual findings." *Id.* We view the record in the light most favorable to the Commonwealth as the prevailing party. *See Commonwealth v. Mathis*, 173 A.3d 699, 706 (Pa. 2017).

The parties agree that when Officers Klein and Ficchi activated the lights on the police vehicle, Price was subjected to an investigative detention, which

---

[8] Price initially argues that his issues should not be waived due to his failure to file a timely Rule 1925(b) statement. *See* Price's Br. at 10. Given that Price filed a Rule 1925(b) statement within 21 days of the date the notes of testimony were filed upon the trial court docket, as he was ordered to do by the trial court; we previously remanded the case in order for the trial court to respond to the issues in Price's 1925(b); and the Commonwealth agrees that Price's issues are not waived, *see* Commonwealth's Br. at 7 n.3, we do not find Price's issues to be waived.

needed to be supported by reasonable suspicion. *See Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa.Super. 2007). Reasonable suspicion exists where an officer's observations and reasonable inferences, in light of his experience, lead to the reasonable conclusion "that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Chambers*, 55 A.3d 1208, 1215 (Pa.Super. 2012). "The totality of the circumstances standard remains the governing standard for the reasonable suspicion analysis and demands an objective consideration of all factors attending a tip provided by a police informant—anonymous or not." *Commonwealth v. Brown*, 996 A.2d 473, 479 (Pa. 2010).

In denying the Motion to Suppress, the trial court relied upon *Navarette v. California*, 134 S. Ct. 1683 (2014).[9] In *Navarette*, the California Highway Patrol broadcast a tip from a 911 caller that a certain vehicle "ran the reporting party off the roadway." *Id.* at 1686-87. The broadcast included a description of the vehicle, including the license plate number and the highway mile marker of its last known location. *Id.* A California Highway Patrol officer who responded to the broadcast located the vehicle eighteen minutes after the incident, 19 miles down the same highway, and pulled it over to investigate. *Id.* at 1687.

_____

[9] Price makes no argument that this Court should not follow *Navarette* because Pennsylvania's Constitution provides Price greater protection than the federal Constitution in this scenario.

The Supreme Court held that the stop was lawful. ***Id.*** at 1692. The Court reasoned that the 911 call, though anonymous, "bore adequate indicia of reliability for the officer to credit the caller's account." ***Id.*** at 1688. The Court explained that the caller's use of the 911 system – which can record the call and "has some features that allow for identifying and tracing callers," "thus provid[ing] some safeguards against making false reports with immunity" – added to the believability of the tip. ***Id.*** at 1689-90. The Court found the tip's reliability was further buttressed by the fact that the tipster implicitly claimed eyewitness knowledge of the dangerous driving. The Court pointed out that the type of tip received in that case – that another car just ran the caller off the road – was the type inherently made "contemporaneous with the observation of criminal activity or made under the stress of excitement caused by a startling event." ***Id.*** at 1689. Although the dissent in ***Navarette*** asserted that there was nothing in that case to suggest that the caller was aware of "the ease of identifying 911 callers," the ***Navarette*** majority nonetheless considered the caller's use of the 911 system to be one factor justifying the officer's reliance on the information reported in the call. ***Id.*** at 1694 (Scalia, J., dissenting).

Here, Officer Klein testified that he received a radio broadcast relaying that an anonymous source had reported to 911 that a black male wearing a white T-shirt and grey shorts and driving a silver Lexus with a license plate reading "GWL8569," was located on the 5100 block of Willows Avenue and in possession of a firearm. Officer Klein observed Price, whose sex, race, T-shirt

color, and vehicle, aside from one digit on the license plate, matched the tip, in the location given by the tip, within a minute. The officer then stopped and questioned Price.

We conclude that the totality of the circumstances supported the stop. First, the officers were responding to a call received by Philadelphia's 911 emergency call center. As the trial court acknowledged, this system can record each call and thus enables the police to trace its source and identify the caller, thus increasing the reliability of any tip received via 911. Second, the tip in this case, which included the location of Price's moving vehicle, implied that the tipster's knowledge was based on contemporaneous eyewitness observations of Price's actions. Finally, not only did nearly every detail of the description the caller gave of the car and perpetrator match Price – including his vehicle, license plate number (save one digit), and clothing – but police also found Price's moving vehicle within *one minute* of the receiving the broadcast, in the very block that the tipster had identified.

This combination of circumstances, viewed in the light most favorable to the Commonwealth, supported the officers' conclusion that the tip was sufficiently reliable. **See *Navarette***, 134 S. Ct. at 1689-90. We therefore conclude that the officers had reasonable suspicion to stop Price's car and investigate further. We affirm the denial of Price's Motion to Suppress.

## II. Motion in Limine

In his second issue, Price argues that the court erred by prohibiting evidence that Rachel Clark burglarized his residence after his arrest. Price

contends that this evidence would have corroborated his defense at trial – that the gun was recovered from the door of his car, where Rachel Clark had hidden it – and that preclusion of this evidence deprived him of a fair trial. Price cites **Commonwealth v. Davis**, 652 A.2d 885 (Pa.Super. 1995), in support.

We review a trial court's grant of a motion in limine for an abuse of discretion, and will not disturb a ruling on the admission of evidence "unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." **Commonwealth v. Akrie**, 159 A.3d 982, 986-87 (Pa.Super. 2017).

The trial court barred the evidence of the burglaries on the basis that it was not relevant. **See** Pa.R.E. 402.[10] Rule 401 of the Pennsylvania Rules of Evidence provides that evidence is only relevant when "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. As the official comment further clarifies, relevancy "is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case." Pa.R.E. 401, Comment. Rule 404(b) specifies that evidence of an act is inadmissible to prove a person's general character, but is admissible to prove other things, such as the person's motive or intent. **See** Pa.R.E. 404(b)(2). We have previously held that Rule 404(b)(2) applies

---

[10] "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

to evidence offered by a defendant implicating the guilt of a third party. **See Commonwealth v. Thompson**, 779 A.2d 1195, 1202 (Pa.Super. 2001).

We conclude that in light of the other testimony offered in the present case, testimony that Clark burglarized Price's home would have offered little to increase the probability that Price was unaware of the handgun in his car on the date of his arrest. The burglaries occurred several weeks after Price's arrest, and Price has not offered any explanation regarding how the burglaries were connected to the events surrounding the recovery of the firearm, aside from as general evidence of Clark's character. The testimony was therefore both irrelevant and inadmissible character evidence under Rule 404(b). Moreover, Price amply testified regarding the facts that were actually relevant to his narrative: his relationship with Clark, her opportunity to plant a gun in his car, and the discord in their relationship that day that may have motivated her to do so.

**Davis** affords Price no relief. In **Davis**, we held that trial counsel could be found ineffective for failing to cross-examine the complaining witness to uncover a potential motive to fabricate. 652 A.2d at 890. Davis alleged that the complaining witness had criminal charges pending against her at the time of his trial. **Id.** at 887. Although the charges stemmed from unrelated incidents that occurred after the crime for which Davis stood trial, we concluded that, if the charges in fact existed, Davis's trial attorney should have cross-examined the witness regarding whether she would receive lenient treatment from the Commonwealth as a result of her testimony against Davis.

*Id.* at 889. We relied on the precept that a defendant's ability to cross-examine the complaining witness should not be impeded, particularly where the complaining witness's testimony is not corroborated by any other evidence, which was the circumstance at Davis's trial. *Id.* at 888-89.

Here, in contrast, Clark did not testify against Price. Because she was not a witness, there was no potentially biased testimony that Price needed to confront. In addition, the Commonwealth presented the testimony of two police officers, who testified that they recovered the firearm from Price's waistband. This case is therefore distinguishable from *Davis*, where the entire case hinged on the unrebutted testimony of a complaining witness who was not sufficiently cross-examined.

We therefore fail to see in what manner the trial court abused its discretion in granting the Commonwealth's Motion in Limine. As neither of Price's issues merit relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/19