2019 PA Super 368

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARRYL PRICE | : | |
| | : | |
| Appellant | : | No. 599 EDA 2016 |

Appeal from the Judgment of Sentence Entered December 30, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009035-2014

BEFORE: OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

OPINION BY McLAUGHLIN, J.:                    **FILED DECEMBER 31, 2019**

This case comes to us on remand from the Pennsylvania Supreme Court, which vacated our previous disposition and instructed us to reconsider this case in light of the Court's interim decision in ***Commonwealth v. Hicks***, 208 A.3d 916 (Pa. 2019), *cert. denied*, No. 19-426, 2019 WL 6689877 (U.S. Dec. 9, 2019). Consistent with ***Hicks***, we conclude the Commonwealth failed to establish that the law enforcement officers in this case had reasonable suspicion to stop Price, and the trial court therefore erred in denying Price's motion to suppress. We vacate Price's judgment of sentence, reverse the order denying suppression, and remand for further proceedings.

Our recitation of the procedural history and relevant facts remains nearly identical to our previous recitation. ***See Commonwealth v. Price***, 203 A.3d 264, 266-68 (Pa.Super.), *vacated*, 217 A.3d 193 (Pa. 2019). In 2014, Price was charged with possession of a firearm by a prohibited person,

_____

\*   Former Justice specially assigned to the Superior Court.

firearms not to be carried without a license, and possession of a firearm in the City of Philadelphia.[1] Prior to trial, Price filed a Motion to Suppress Physical Evidence, claiming that he had been seized and searched without probable cause or reasonable suspicion. The trial court held a hearing on January 15, 2015, at which the Commonwealth presented the testimony of Philadelphia Police Officer Kevin Klein.

Officer Klein testified that on the night in question,[2] he was working in an unmarked patrol vehicle with his partner, Officer Christopher Ficchi, when they received a radio broadcast to respond to the 5100 block of Willows Avenue. *See* N.T., 1/15/15, at 15-16. According to Officer Klein, who had been a Philadelphia Police Officer for seven years at the time of the hearing, violent crime is prevalent in that area. *Id.* at 13, 28-29. The radio broadcast reported that a black male, wearing a white T-shirt and gray shorts, was driving a silver Lexus with a license plate reading "GWL8569," and was carrying a firearm. *Id.* at 15-16, 29. Officer Klein indicated that the radio broadcast was the result of a 911 call. *Id.* at 30.

Officer Klein testified that he and Officer Ficchi arrived at the intersection of 51st Street and Willows Avenue within a minute of receiving the radio broadcast and saw a silver Lexus, facing westbound, stopped at a stop sign.

---

[1] 18 Pa.C.S.A. §§ 6105, 6106, and 6108, respectively.

[2] According to the Notes of Testimony of the suppression hearing, Officer Klein testified that the incident occurred on July 23, 2013. However, all other documentation in the record, including the transcript of Officer Klein's trial testimony, indicates that Price was arrested on July 23, 2014.

*Id.* at 17-18. The Lexus proceeded through the intersection and past the unmarked police vehicle, which was stopped at the same intersection, facing eastbound. *Id.* at 18. As the Lexus passed the officers' car, Officer Klein observed that the driver was a black male, later identified as Price, who was wearing a white T-shirt. *Id.* Officer Klein also saw that the car had a license plate reading "GWL8568," which Officer Klein noted differed by only one digit from the number provided by the radio broadcast. *Id.* The officers turned their vehicle around and followed the Lexus until it pulled into a parking spot. *Id.* at 18-19, 27. The officers stopped their vehicle and activated their lights. *Id.* at 19, 27.[3]

Officer Klein exited the police car and approached the passenger side of the Lexus. *Id.* at 19. The window was down, and Officer Klein could see that Price was wearing gray shorts in addition to wearing a white T-shirt. *Id.* Price had his hands on the steering wheel, and did not respond when Officer Klein asked if he was carrying a firearm. *Id.* Officer Klein walked to the driver's side of the Lexus, opened the door, and asked Price to step out. *Id.* at 20. Price stood up, and as he turned, Officer Klein could see that he had a large bulge in the stomach area of his waistband. *Id.* Officer Klein testified that in his

_____

[3] Officer Klein made a statement to police detectives approximately an hour after Price's arrest, in which he stated that after he and Officer Ficchi turned right on Malcolm Street, following the Lexus, they "activated the lights and [Price] pulled over and parked." *Id.* at 33-34. This discrepancy has no bearing on our analysis, as the parties agree that Price was effectively stopped once the police activated their lights, regardless of whether this occurred before or after Price pulled the Lexus into a parking spot.

experience, most individuals carry firearms in the waistband area. *Id.* at 14-15. Officer Klein told his partner that he observed the bulge, and they both grabbed Price's arms. *Id.* at 20. Officer Klein felt the bulge, and found that it felt like a hard metal object. *Id.* The officers handcuffed Price and removed from his waistband a Kel-Tec 9-millimeter gun. *Id.*

As Officers Klein and Ficchi were arresting Price, they were approached by a woman named Rachel Clark, who told the officers that she had called 911. *Id.* at 21-22, 28. She pointed to Price and said, "[T]hat's him," and asked the officers if they had recovered the gun. *Id.* at 22. Officer Klein noted that Clark appeared to be standing out of Price's view, and initially appeared to be nervous, but was relieved once the officers told her they had obtained the firearm. *Id.* Clark informed the officers that she had called 911 because she observed Price "put an item in the trunk of the vehicle" and that "he loaded bullets into a brown bag and placed that item into the trunk of the vehicle." *Id.* Clark was taken to a police station, where she gave a statement.[4] *Id.* at 28.

Officer Klein asked Price if he had any other bullets in the vehicle. *Id.* at 23. Price responded that there were bullets in the trunk, and gave Officer Klein written permission to retrieve them. *Id.* In the trunk, Officer Klein found a brown corduroy bag containing 41 live rounds of 9-millimeter ammunition, six blue latex gloves, and one pair of black leather gloves. *Id.*

---

[4] Clark's statement was not introduced as evidence at the hearing.

Relying on **Navarette v. California**, 572 U.S. 393 (2014), the trial court found that the police had reasonable suspicion to stop Price based on the 911 call. The court explained that the 911 center in Philadelphia can "track [911 calls] if it's a landline," and that "they have caller ID if it's not a landline." N.T., 1/15/15, at 54. The court also noted that 911 callers have their voices recorded, and the police may be able to establish a 911 caller's identity through tracing and tracking systems, which minimize the possibility that a caller would be dishonest. *Id.* The court therefore determined that the 911 call was sufficiently reliable to support reasonable suspicion to justify stopping Price's car, and denied Price's Motion to Suppress.[5]

Price proceeded to a non-jury trial. The court found Price guilty of the above offenses and thereafter sentenced him to a minimum of five to ten years' incarceration followed by five years' probation.

Price filed a timely notice of appeal.[6] His first issue on appeal was whether the trial court erred in denying his motion to suppress, because, according to Price, the stop leading to his arrest was based on an anonymous

---

[5] The Commonwealth filed a pre-trial Motion in Limine, for which the trial court also held a hearing. The court granted the motion, and that decision was one of the issues Price raised on appeal. However, because we now vacate Price's judgment of sentence on the basis of his suppression motion, we need not recount the facts related to the motion in limine.

[6] **See Price**, 203 A.3d at 268 n.7 (recounting the various causes of delay in Price's appeal).

and unreliable phone call and therefore not supported by reasonable suspicion or probable cause.

We affirmed Price's judgment of sentence on January 28, 2019. **Price**, 203 A.3d at 272. We concluded the trial court did not err in denying Price's motion to suppress, because the totality of the circumstances supported the reliability of the tip that Price was carrying a firearm:

> First, the officers were responding to a call received by Philadelphia's 911 emergency call center. As the trial court acknowledged, this system can record each call and thus enables the police to trace its source and identify the caller, thus increasing the reliability of any tip received via 911. Second, the tip in this case, which included the location of Price's moving vehicle, implied that the tipster's knowledge was based on contemporaneous eyewitness observations of Price's actions. Finally, not only did nearly every detail of the description the caller gave of the car and perpetrator match Price – including his vehicle, license plate number (save one digit), and clothing – but police also found Price's moving vehicle within *one minute* of the receiving the broadcast, in the very block that the tipster had identified.

**Price**, 203 A.3d at 270-71. Implicit in our holding was the long-standing "**Robinson**[7] rule" — that "possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer may briefly detain him in order to investigate whether the person is properly licensed." **Hicks**, 208 A.3d at 921 (quoting **Robinson**, 600 A.2d at 959).

_____

[7] **Commonwealth v. Robinson**, 600 A.2d 957 (Pa.Super. 1991).

Price petitioned the Pennsylvania Supreme Court for allowance of appeal. On May 31, 2019, the Pennsylvania Supreme Court decided **Hicks**, in which it overturned the **Robinson** rule.[8] **Id.** The Supreme Court held that because carrying a firearm is not an inherently illegal activity in Pennsylvania,[9] there "is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity." **Id.** at 937. The Court distinguished the scenario from one in which "a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm," or has "articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner." **Id.** The Court stated that the time of day and the individual's location in a high crime area are factors relevant to the totality of the circumstances, but do not constitute a "particularized basis upon which to

---

[8] In **Hicks**, the police were dispatched to a gas station in a high-crime area at around 3:00 a.m. The police had received notification that a camera operator had just observed Hicks (via live video surveillance), while in possession of a firearm, enter the store. By the time the police arrived, Hicks had exited the store and was driving his vehicle to the exit of the parking lot. The police stopped Hicks and removed him from his vehicle.

[9] As the Court observed, "an individual licensed to carry a firearm may do so in public, openly or concealed, within a vehicle or without, throughout every municipality in Pennsylvania." **Hicks**, 208 A.3d at 926.

suspect that [the person's] mere possession of a concealed firearm [is] unlawful." **Id.** at 951; **see also id.** at 938-39.[10]

As stated above, the Court thereafter remanded the instant case for further review in light of **Hicks**.[11] We conclude that **Hicks** controls the outcome of this case, and we now vacate and remand.

Here, Officer Klein testified that he received a radio broadcast, based on a 911 call, relaying that a black male wearing a white T-shirt and grey shorts and driving a silver Lexus with a license plate reading "GWL8569," was located on the 5100 block of Willows Avenue and in possession of a firearm. Officer Klein observed Price, whose sex, race, T-shirt color, and vehicle, aside from

_____

[10] The Court offered the following guidance to law enforcement officers who receive a tip that does not amount to reasonable suspicion:

> An officer responding to a dispatch such as the one in this case is capable of responding in a manner not amounting to a seizure by observing the suspect and the circumstances, by determining whether anyone appears to be in danger or whether a crime appears to be occurring, and by interviewing witnesses about any crimes that may have occurred before the officer's arrival. **See** [**Commonwealth v.**] **Jackson**, 698 A.2d [571,] 575 [(Pa. 1997)] (reasoning that, where the available information does not give rise to reasonable suspicion, "the police must investigate further by means not constituting a search and seizure."). Such activities preserve peace, law, and order, and do so without depriving anyone of his freedom unless there is cause to do so.

**Hicks**, 208 A.3d at 946.

[11] Price raised the issue of whether the police had reasonable suspicion to effectuate a stop, which is a legal question over which this Court exercises *de novo* review. **Commonwealth v. Dunham**, 203 A.3d 272, 277 (Pa.Super.), *appeal denied*, 217 A.3d 195 (Pa. 2019).

one digit on the license plate, matched the tip, in the location given by the tip, within a minute of receiving it. The officer then stopped and questioned Price. Rachel Clark approached Officer Klein after the arrest, and told him she had called 911 because she observed Price "put an item in the trunk of the vehicle" and "[load] bullets into a brown bag and [place] that item into the trunk of the vehicle."[12] The Commonwealth presented no other evidence regarding the contents of the 911 call or the radio broadcast.

Thus, according to the evidence presented by the Commonwealth, the police were acting solely upon information that a person matching a certain description was located at a certain place within a high-crime area and was carrying a firearm. There was no evidence that the police had reason to believe that Price was carrying a firearm illegally or was engaged in any other illegal activity. Nor did the police observe Price do anything illegal before stopping him. Although the police were acting according to the law of the time, under **Hicks**, the police lacked reasonable suspicion to stop Price. We therefore vacate Price's judgment of sentence, reverse the trial court's order denying the suppression motion, and remand for further proceedings.

In our initial disposition of this case, we also reviewed the trial court's decision to grant the motion in limine, Price's second issue on appeal. **See**

---

[12] Although we recount Officer Klein's testimony regarding Rachel Clark, insofar as her statements may indicate the potential content of the 911 call and the basis of her knowledge, we note the Commonwealth must present evidence that the police were in possession of any information supporting reasonable suspicion **prior** to the seizure. **See Commonwealth v. Wiley**, 858 A.2d 1191, 1197 (Pa.Super. 2004).

*Price*, 203 A.3d at 271-72. Because we now vacate Price's judgment of sentence, we need not revisit the motion in limine.

Judgment of sentence vacated. Suppression order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Ott joins the opinion.

PJE Stevens concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/19