J-S73016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORDAN ANTHONY BATTY | : | |
| | : | |
| Appellant | : | No. 1322 MDA 2019 |

Appeal from the PCRA Order Entered June 20, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002942-2015

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 29, 2020**

Jordan Anthony Batty appeals *nunc pro tunc* from the trial court's order denying, after a hearing, his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 954-9546.  We affirm.

In the afternoon of March 24, 2015, York City police officers Clayton Glatfelter and Dan Kling responded to a call of shots fired in the area of Pattison and Prospect Streets.  N.T. Preliminary Hearing, 5/5/15, 5.  As they travelled eastbound on Prospect Street, York County Control disseminated descriptions of the alleged perpetrators, a black male wearing a blue hooded sweatshirt and a black or possibly Hispanic male wearing a black hooded sweatshirt.  *Id.*  The report indicated that the perpetrators were running from a house on Prospect Street toward a "Mom and Pop" store on East Prospect

Street. *Id.*[1] County Control continually updated the report, finally alerting law enforcement that the male wearing the black hoodie was carrying a gun and that the perpetrators had entered the Mom and Pop store. *Id.* As he pulled up to the store in his police cruiser, Officer Glatfelter looked to his left and saw a black male wearing a blue-hooded sweatshirt through the store's screen door. *Id.* at 6. After parking the police cruiser, he watched the man in the blue hooded sweatshirt exit the store; Officer Glatfelter called him back and he was taken into police custody. *Id.* At that point, Officer Glatfelter opened the front screen door of the store and ordered Batty, who matched the description of a light-skinned black or Hispanic male wearing a black hooded sweatshirt, to exit the store and put his hands on an outdoor soda machine. *Id.* at 11. Officer Glatfelter then asked Batty whether he had a weapon on him, Batty stated "yes" and then "started to drop his hand to his right side, at which time [Officer Glatfelter] pushed his hand back up onto [the] soda machine and reached out and removed the weapon], a .22 caliber revolver,] from [Batty's] waistband" which contained live rounds as well as

_____

[1] York County police officers Timothy Clymer and Chuck Lloyd Crumpton were riding together in their marked patrol vehicle and were also dispatched to the subject area based on the report of shots fired. N.T. Preliminary Hearing, 5/15/15, at 14. They, like Officers Glatfelter and Kling, were updated with the same information from County Control as they drove to Prospect Street. *Id.* On their way to the scene, the officers were flagged down by several witnesses on nearby Courtland Street who observed the shots that had been fired. *Id.* at 15. The officers saw apparent bullet holes in two vehicles parked on the street. *Id.* Officers Clymer and Crumpton ultimately arrived on the scene at the shop where Batty and his cohort had been detained. *Id.*

spent casings. ***Id.*** at 12, 22. Officer Glatfelter testified at the preliminary hearing that he could not see the gun on Batty when he first saw him at the store. ***Id.*** at 7.

On September 11, 2015, a jury convicted Batty of receiving stolen property (RSP),[2] firearms not to be carried without a license,[3] and possession of a firearm prohibited.[4] He was sentenced to 3½ to 7 years' imprisonment for possession of a firearm not to be carried without a license, a concurrent term of 2½ to 5 years of imprisonment for RSP, and a consecutive term of 5-10 years' imprisonment for possession of firearm prohibited. At Batty's sentencing hearing, the trial judge advised him that either trial counsel had been ineffective during closing argument or the trial court erred when it issued its jury instructions. The court suggested Batty waive his appellate rights and orally move for a new trial, which the court indicted it would grant. Batty ultimately agreed to waive his appellate rights and moved for relief under the PCRA. The court ordered Batty receive a new trial and that new counsel be appointed. The Commonwealth noted its objection.

On November 6, 2015, the Commonwealth filed a notice of appeal claiming that the trial court erred by granting Batty a new trial under the PCRA, where the court did not first conduct an evidentiary hearing to

---

[2] 18 Pa.C.S. § 3925(a).

[3] 18 Pa.C.S. § 6106(a)(1).

[4] 18 Pa.C.S. § 6105(a)(1).

determine whether counsel acted reasonably and whether Batty was prejudiced by counsel's actions. ***See Commonwealth v. Batty***, No. 1961 MDA 2015 (Pa. Super. filed June 29, 2016) (unpublished memorandum). On appeal, our Court reversed the order granting Batty a new trial, vacated Batty's judgment of sentence, and remanded for resentencing, stating:

> We cannot condone the process followed by the trial court. The appellate and post-conviction review process is in place to ensure that all parties receive a fair and impartial proceeding. Here, the trial court skipped both avenues for relief, the appellate process and the post-conviction process. The trial court provided no law in support of his [sic] decision to avoid these avenues. Rather, the trial court found that either the trial court erred when instructing the jury or counsel was ineffective during his closing argument, without providing legal analysis in support of this conclusion.
>
> Trial courts are not permitted to bypass the appellate and post-conviction proceedings, particularly where the parties are not in agreement with the proposed resolution. Here, the Commonwealth noted it was uncomfortable with the proposed procedure and objected, both before and after sentencing. Further, although Batty ultimately orally agreed to waive his right to appeal, this agreement occurred only after the trial court made numerous attempts to convince him to do so and after the trial court repeatedly informed Batty that he would receive a new trial and new counsel if he waived his appellate rights.

***Id.*** at 10-11.

On remand, the court appointed new counsel and, on October 27, 2016, sentenced Batty to an aggregate term of 8½ to 17 years in prison.[5] On November 23, 2016, Batty filed post-sentence motions *nunc pro tunc* due to

---

[5] The court sentenced Batty to 3½-7 years in prison for RSP, a concurrent term of 3½-7 years in prison for carrying a firearm without a license, and a consecutive term of 5-10 years in prison for possession of a firearm prohibited.

counsel's recent appointment. The trial court granted a new trial on January 10, 2017, finding that the court's jury instruction on the charge of possession of a firearm prohibited was erroneous and "usurped the function of the jury to determine a verdict in a criminal case[.]" Trial Court Opinion, 1/10/17, at 5. On February 8, 2017, the Commonwealth filed a notice of appeal. On April 9, 2018, our Court reversed the trial court's order granting a new trial and reinstated Batty's October 2016 judgment of sentence, concluding that the court's jury instruction accurately and clearly set forth the elements of the crime of possession of a firearm prohibited. ***Commonwealth v. Batty***, 169 A.3d 70 (Pa. Super. 2017).

On December 21, 2018, Batty filed a *pro se* PCRA petition. The trial court appointed counsel, who filed a "supplemental" petition. On June 20, 2019, the court held an evidentiary hearing on Batty's petition and, at the conclusion of the hearing, denied his petition. Batty subsequently filed a petition seeking the right to file a *nunc pro tunc* notice of appeal, which the trial court granted on August 6, 2019. Batty filed his *nunc pro tunc* notice of appeal and a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Batty raises the following issue for our review: "Whether the trial court committed an error of law and/or abuse of discretion by denying [Batty's] PCRA petition and concluding that his trial counsel did not render ineffective assistance of counsel by failing to file a requested motion to suppress?" Appellant's Brief, at 4.

On appeal from the denial of PCRA relief, we must determine whether the PCRA court's findings are supported by the record and whether the order is otherwise free of legal error. **Commonwealth v. Blackwell**, 647 A.2d 915, 920 (Pa. Super. 1994). We will not disturb the PCRA court's findings unless they have no support in the record. **Id.**

Batty contends that trial counsel was ineffective[6] for failing to file a motion to suppress the firearm that was seized during a search and seizure of his person in response to an anonymous 911 call. Specifically, Batty relies on **Commonwealth v. Jackson**, 698 A.2d 571 (Pa. 1997), to support his argument that Officer Glatfelter lacked the authority[7] to search him where the

---

[6] It is well-established that in order to prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). Moreover, "counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." **Id.** Finally, a petitioner alleging ineffective assistance of counsel must show that, "in the circumstances of the particular case," the actions of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

[7] In his supplemental PCRA petition Batty claims that the police lacked probable cause to conduct a **Terry** stop and frisk. **See** Supplemental PCRA Petition, 5/22/19, at 6. We note, however, that such a search is premised upon reasonable suspicion that criminal activity has occurred or is about to occur. **See Commonwealth v. Hicks**, 253 A.2d 276 (Pa. 1969) (to justify warrantless pat-down of person under **Terry**, police must have reasonable suspicion based on specific and articulable facts that crime occurred and that person being detained is armed and dangerous); **Jackson**, 698 A.2d at 573

- 6 -

officer "did not independently corroborate that a shooting had actually occurred, or that [Batty] was potentially involved, prior to conducting a search outside of the store."  Appellant's Brief, at 10.[8]

_____

(Pa. 1997) ("While the amount of information available to the police *need not rise to the level of probable cause*, something more than an inchoate and unparticularized hunch would be required [in order for the police to] . . . conduct a limited, pat-down search for weapons when the officer has a reasonable suspicion that the individual is armed and dangerous.") (emphasis added).

[8] We recognize that the issue raised by Batty on appeal as well as the facts of this case are readily distinguishable from those in *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019).  In *Hicks*, our Supreme Court recently held that allowing an officer to approach an individual and briefly detain him or her, in order to investigate whether he or she was properly licensed to possess a concealed firearm in public, contravened the requirements of *Terry v. Ohio*, 392 U.S. 1 (1968), and subverted the fundamental protections of the Fourth Amendment.  The *Hicks* Court further held that the trial court erred by denying the defendant's motion to suppress because, in consideration of the totality of the circumstances, the facts did not support a finding of reasonable, articulable suspicion that defendant was engaged in any manner of criminal activity prior to his seizure and was seized solely due to the observation of a firearm concealed on his person.  *See also Commonwealth v. Price*, 2019 PA Super 368 (Pa. Super. filed Dec. 31, 2019) (where officer received radio broadcast based on 911 call relaying black man wearing white tee-shirt and gray shorts and driving silver Lexus with license plate "GWL8569" was located on specific city block and in possession of firearm, officer lacked reasonable suspicion to stop defendant who fit description because officer did not have evidence to believe defendant was carrying firearm illegally, was engaged in any other illegal activity, and did not observe him doing anything illegal before stopping him).

Here, not only does Batty not raise this issue to support his contention that counsel should have filed a motion to suppress, but the instant case involved more than the officers investigating a report that an individual had been observed carrying a firearm on his person.  Rather, multiple reports indicated that shots had been fired in the area by the suspected perpetrators.  *Cf. Hicks*, 208 A.3d at 950 ("There was no indication or apparent threat of

A police officer need not personally observe suspicious conduct leading to the reasonable belief necessary for a ***Terry***[9] stop; he or she may rely upon information received over the police radio to justify the initial stop. ***Commonwealth v. Arch***, 654 A.2d 1141, 1143 (Pa. Super. 1995) (while officer is prohibited from relying on unparticularized suspicion or "hunch" as basis for ***Terry*** stop, he or she may rely on police radio broadcast if suspect matches specific description given by individual who reported crime). In such cases, the factors that must be considered in justifying an investigatory stop include: the specificity of the description of the suspect in conjunction with how well the suspect fits the given description; the proximity of the crime to the sighting of the suspect; the time and place of the confrontation; and the nature of the offense reported to have been committed. ***Commonwealth v. Jackson***, 519 A.2d 427, 430 (Pa. Super. 1986). A major factor justifying a ***Terry*** stop when the suspicious conduct has not been personally observed is the specificity of the description of the suspect. ***Id.*** Quoting ***Commonwealth v. Hawkins***, 692 A.2d 1068, 1070 (Pa. 1997) (plurality opinion), the ***Jackson*** Court stated:

> The fact that the subject of the call was alleged to be carrying a gun, of course, is merely another allegation, and it supplies no reliability where there was none before. And since there is no gun exception to the ***Terry*** requirement for reasonable suspicion of criminal activity, *in the typical anonymous caller situation, the*

violence, and no information suggesting that Hicks engaged in any type of confrontation with another individual, physical, verbal, or otherwise.").

[9] ***Terry v. Ohio***, 392 U.S. 1 (1968).

> *police will need an independent basis to establish the requisite suspicion.*

***Jackson***, 698 A.2d at 575 (emphasis added).

In ***Jackson***, the police received a report, based on an anonymous telephone call, of a man in a green jacket carrying a gun. Other than the jacket description and the man's location, no additional details were provided. When the officer arrived at the location, he saw a number of individuals, but only the defendant was wearing a green jacket. The officer exited his vehicle and immediately searched the defendant. During the search, no weapon was found, but a small box containing cocaine fell to the ground. The defendant filed an unsuccessful suppression motion claiming the tip did not justify a ***Terry*** stop and frisk. On direct appeal, our Court upheld the suppression ruling and affirmed Jackson's convictions. On discretionary review, the Supreme Court reversed, finding that the contents of the anonymous call did not justify the stop because the tip contained insufficient information to establish reasonable suspicion. The Court held that under such circumstances the police must investigate further, and may only initiate a stop and frisk after they acquire sufficient information to give rise to reasonable suspicion that the individual was armed and dangerous.

In ***Commonwealth v. Mackey***, 177 A.3d 221 (Pa. Super. 2017) (en banc), our Court recognized the important distinction between anonymous tips and those that are from trusted or tested informants or members of the public not concealing their identity. Distinguishing between the two types of tips, the Court noted that because anonymous tipsters cannot be held accountable

for making false allegations, it is particularly difficult for police to evaluate their reliability. *Id.* at 230. Moreover, because they are not identified, anonymous tipsters are not available to answer follow-up questions from police. *Id.* Accordingly, in the case of an anonymous tip, an officer must have additional corroborating information to determine whether a suspect is carrying a firearm, committing a crime, or about to commit a crime before justifying a *Terry* stop and frisk based on reasonable suspicion. *Id.* at 233.

In the instant case, Tabitha Neal, a York County 911 emergency services' customer service quality control specialist, testified at Batty's PCRA hearing. *Id.* at 70. Neal, the record keeper in the department, keeps track of computer-aided dispatch (CAD) reports, the same type of report involved in the instant case. *Id.* at 71. Neal testified that an individual named Ruth Rodriguez called emergency services and provided the information in the CAD report leading to Batty's arrest. *Id.* at 75. Neal testified that emergency services takes the name and number of an identified caller for documentation purposes. *Id.* at 83. Moreover, Neal testified that multiple individuals had called into the center and provided similar reports of shots being fired and described the alleged perpetrators. *Id.* at 82. Neal testified that the calls had been merged together for informational purposes and provided to the police officers. *Id.*

Here, unlike the facts of *McKay* and *Jackson*, not only was there an identified, non-anonymous caller reporting that shots had been fired and giving a physical location and description of Batty and his cohort, but there

were also multiple reports from unidentified callers that confirmed shots had been fired in the area and that consistently physically described the alleged perpetrators. *See Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa. Super. 2005) ("Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk.") (citation omitted); *see also Commonwealth v. Thran*, 185 A.3d 1041, 1046 (Pa. Super. 2018) (same). Had the report been based on a single anonymous call not subject to corroboration and had there been no criminal activity afoot (shots fired), we would agree with Batty that his suppression claim may have arguable merit. However, those are not the facts of this case.

Accordingly, under a totality of the circumstances, including the proximity in time and location of the crime to the sighting of Batty and the fact that the physical descriptions matched those of the perpetrators, we conclude that the police had reasonable suspicion to conduct a *Terry* stop and frisk. *Arch*, *supra*. Counsel cannot be deemed ineffective when a petitioner's underlying claim has no arguable merit. *Spotz*, *supra*. Accordingly, we affirm the trial court's order denying Batty's PCRA petition as the PCRA court's findings are supported by the record and are free of legal error. *Blackwell*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/29/2020