J-S20022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT KEYS | : | |
| | : | |
| Appellant | : | No. 2446 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 23, 2022,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0000118-2021.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 26, 2023**

Robert Keys appeals from the judgment of sentence imposed after his non-jury conviction for violations of the Uniform Firearms Act.[1]  He challenges the denial of his motion to suppress evidence.  We affirm.

On September 23, 2020, Keys was arrested and charged with the above crimes after police found a gun in his waistband.  He moved to suppress the gun; the suppression court heard Keys' motion on May 4, 2022.  The Commonwealth presented the testimony of Officers Christopher Rycek and Marc Kusowski.  The court summarized its factual findings:

> On September 23, 2020, at approximately 11:56 a.m., uniformed Philadelphia Police Officers Rycek, Lane, and Kusowski were on patrol in the City's 25th Police District.  Traveling

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108.

eastbound on Clearfield Street in a marked police cruiser, approaching the intersection of C Street, Officer Rycek noticed [Keys] walking westbound towards them on Clearfield. Officer Rycek observed [Keys] glance at their cruiser and subsequently adjust an object tucked in his front waistband. Officer Rycek then alerted his partner, Officer Kusowski, that [Keys] had just adjusted what he believed to be a firearm in his front waistband.

As the patrol car drew level with [Keys], Officer Rycek, who was driving, braked and rolled down the front passenger window. He called out to [Keys], asking whether he was carrying a gun. [Keys] said no and continued walking westward, quickening his pace slightly. Officer Kusowski then exited the cruiser and approached [Keys] on foot, asking him again whether he was carrying a gun. As Officer Kusowski spoke, [Keys] turned his body approximately 45 degrees to the left and stood with his arms roughly akimbo [blocking his waist]. Moments later, [Keys] stepped backwards, at which point Officer Kusowski physically restrained him from further retreating.

Convinced that [Keys] was concealing a gun in his waistband—and afraid that he may try to draw it—Officer Kusowski grabbed at [Keys'] front waistband and recovered a Smith and Wesson nine-millimeter handgun. Officer Kusowski subsequently detained [Keys] on suspicion of firearms violations. While detained, [Keys] admitted that he did not have a license to conceal carry. Upon running the firearm's serial numbers, the officers confirmed that [Keys] did not possess a concealed carry permit and that the gun was stolen. The officers arrested [Keys] for firearms violations.

Suppression Court Opinion, 12/14/22, at 1–2 (record citations omitted).

The court denied suppression. The case immediately proceeded to a non-jury trial based on the non-hearsay evidence from the suppression hearing. Keys was convicted on all counts. On September 23, 2022, the court sentenced Keys to 11½ to 23 months of imprisonment followed by 3 years of probation. Keys timely appealed. Keys and the suppression court complied with Pennsylvania Rule of Appellate Procedure 1925.

Keys presents two questions for our review:

1. Did the trial court err by denying the Motion to Suppress where the police lacked reasonable suspicion to detain or frisk Keys?

2. Did the trial court err by denying the Motion to Suppress where the police lacked probable cause to search Keys?

Keys' Brief at 4.

Keys argues that he was subjected to an investigative detention when Officer Kusowski physically restrained him from walking away and then grabbed at his waistband. *Id.* at 10. He contends that the surrounding circumstances did not provide reasonable suspicion: Officer Rycek was unsure if Keys had a firearm, law-abiding citizens are often nervous in a police encounter, and Keys had his arms up because he had objects in his hands. *Id.* at 11–12. Keys notes that possession of a concealed firearm alone does not provide reasonable suspicion to detain an individual and check whether he is licensed to carry it. *Id.* at 12–13.

Keys further argues that Officer Kusowksi required probable cause to search him to recover the firearm. *Id.* at 13. Keys reasons that because the police lacked reasonable suspicion, they did not have probable cause either. *Id.* at 14. He therefore concludes that the firearm should have been suppressed. *Id.*

The Commonwealth emphasizes that the police interaction was a mere encounter until Officer Kusowski grabbed Keys. Commonwealth's Brief at 7. Considering the officers' observations until that moment, the Commonwealth points to multiple factors that gave reasonable suspicion to stop Keys and pat

him down to search for weapons—in a high-crime area, Keys adjusted his waistband immediately upon seeing a police car, denied that he was armed, appeared nervous, blocked his waistband with his hands, turned, and stepped backwards. *Id.* at 9–10. The Commonwealth submits that police could thus stop and frisk Keys without a showing of probable cause. *Id.* at 11–13.

\* \* \*

The following principles guide our review:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 266 A.3d 1090, 1093–94 (Pa. Super. 2021) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015)). Because Keys challenges the suppression court's legal conclusions, not its factual findings, we set forth the applicable law.

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect against unreasonable

searches and seizures. *Commonwealth v. Hicks*, 208 A.3d 916, 924–25 (Pa. 2019). The protections are coextensive in requiring reasonable suspicion for an officer to "stop and frisk" an individual under *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* at 925 (citing *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010), and *Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa. 1997)).

The law defines reasonable suspicion as follows:

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify [an investigative detention], a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. *Commonwealth v. Melendez*, 676 A.2d 226, 228 (Pa. 1996). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999).

*Brown*, 996 A.2d at 477 (citation format altered).

Notably, an officer must have separate justifications to initiate an investigative detention (the stop) and to perform a pat-down search for weapons (the frisk):

First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.

*Hicks*, 208 A.3d at 921 (quoting *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009)).

In **Hicks**, our Supreme Court held that a person's mere possession of a concealed firearm in public does not create reasonable suspicion that he is dangerous, so as to justify briefly detaining him to investigate if he is properly licensed. **Id.** at 947 (rejecting **Commonwealth v. Robinson**, 600 A.2d 957 (Pa. Super. 1991)). Therefore, where the police received a report that a driver was carrying a firearm in a high-crime area of Philadelphia, they lacked reasonable suspicion to stop him. **Commonwealth v. Price**, 225 A.3d 1118, 1122–23 (Pa. Super. 2019) ("There was no evidence that the police had reason to believe that Price was carrying a firearm illegally or was engaged in any other illegal activity. Nor did the police observe Price do anything illegal before stopping him.").

However, police may consider contextual factors to reasonably suspect that an individual's possession of a gun is illegal. **See Hicks**, 208 A.3d at 938–39 (recognizing that firearm possession may be suspicious in light of other factors, such as presence in a high crime area); **cf. Commonwealth v. Barr**, 266 A.3d 25, 41–42 (Pa. 2021) (drawing from **Hicks** to conclude that while the smell of marijuana alone does not provide probable cause to search a vehicle, it may be considered among other factors). Factors that are otherwise innocent, which can combine to support reasonable suspicion, include angling one's body away from the police, **Commonwealth v. Carter**, 105 A.3d 765, 775 (Pa. Super. 2014) (*en banc*), and making furtive movements with extreme nervousness, **Commonwealth v. Buchert**, 68 A.3d 911, 916–17 (Pa. Super. 2013).

- 6 -

Finally, with respect to conducting a ***Terry*** frisk, an officer may remove an object from a suspect's clothing "under one of two justifications":

> Pursuant to ***Terry***, . . . a police officer may remove an object from within a suspect's clothing under the reasonable suspicion that the object is a weapon. If, however, during the frisk the police officer is able to determine that the object is not a weapon, . . . the officer may only remove the object if, by touch, it is immediately apparent that the object is illegal contraband.

***Interest of T.W.***, 261 A.3d 409, 422 (Pa. 2021) (drawing from ***Commonwealth v. Taylor***, 771 A.2d 1261 (Pa. 2001) (plurality), and ***Minnesota v. Dickerson***, 508 U.S. 366 (1993)). If an officer does not determine during a frisk that an unknown object is not a weapon, the officer requires only reasonable suspicion to remove the object, not probable cause. ***Id.*** at 423.

Turning to Keys' case, both parties advocate that the police interaction became an investigative detention when Officer Kusowski physically grabbed Keys. Keys' Brief at 10; Commonwealth's Brief at 7. The case thus turns on whether the totality of the circumstances at that moment led the police to reasonably suspect that Keys was committing a criminal offense (to justify a stop) and was armed and dangerous (to justify a frisk). ***Hicks***, 208 A.3d at 921.

The suppression court analyzed this issue as follows:

> In [a] high crime area of the city, Officer Rycek observed [Keys] glance at [the] marked cruiser and immediately adjust a concealed object in his front waistband. [Keys] quickened his pace after Officer Rycek called to him from the cruiser. And though he turned to face Officer Kusowski who approached on foot

a few moments later, [Keys] purposefully rotated his hips and held his arms so as to disguise the silhouette of his weapon. Officer Kusowski reasonably inferred that these were not the actions of someone licensed to carry a firearm but rather the actions of someone unlicensed to carry one. That there was, perhaps, an innocuous explanation for [Keys'] furtive actions does not defeat the rationality of Officer Kusowski's inferences. Together, these factors were sufficient to permit the stop of [Keys].

Although the frisk quickly followed the stop, it too was constitutionally justified. Officer Kusowski testified at the hearing, "[i]t appeared to me that [Keys] was trying to conceal that front waist from my view. And with his hands there, Your Honor, I was afraid he may grab at the firearm, so I frisked him." Officer Kusowski reasonably suspected [Keys] of firearm violations. [Keys'] furtive movements, cagey behavior, and the proximity of his hands to the concealed weapon were sufficient to permit the frisk.

Suppression Court Opinion, 12/14/22, at 4–5 (citations omitted).

We agree with the suppression court's analysis and adopt it as our own. Based on **Hicks**, the police needed reasonable suspicion, not just that Keys was carrying a firearm, but that he was doing so illegally—concealed, without a license in Philadelphia, or after being convicted of an enumerated crime. **See** 18 Pa.C.S.A. §§ 6105, 6106, 6108. Keys' actions to obscure his waist from the officers led the police to reasonably suspect that his firearm possession was illegal, such that they could temporarily detain him for further investigation. **Carter**, **supra**; **Buchert**, **supra**. While Keys' movements could have a benign explanation, this does not negate the officers' reasonable suspicion. **Brown**, 996 A.2d at 477. Additionally, Officer Kusowski could frisk Keys' waistband because he reasonably suspected that Keys' actions of carrying a firearm illegally rendered him armed and dangerous.

When Officer Kusowski grabbed the object from Keys' waistband, he had not determined that it was not a weapon. Therefore, contrary to Keys' assertion, the officer required reasonable suspicion, not probable cause, to recover the gun. *T.W.*, *supra*. As described above, Keys' motions to obscure his waist, where the officers suspected he had a weapon, provided reasonable suspicion that he was carrying a firearm illegally. For these reasons, the suppression court did not err in denying Keys' motion to suppress the gun.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2023