J-S07020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZANDER KEITH SHEARER | : | |
| | : | |
| Appellant | : | No. 1183 MDA 2023 |

Appeal from the Judgment of Sentence Entered July 18, 2023
In the Court of Common Pleas of Clinton County Criminal Division at
No(s):  CP-18-CR-0000169-2022

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:         **FILED: MARCH 20, 2024**

Zander Shearer appeals from the judgment of sentence entered following his convictions for driving under the influence (DUI) and possessing marijuana.[1]  He challenges the denial of his motion to suppress evidence.  We affirm.

On December 19, 2021, Trooper Joshua Eichenlaub of the Pennsylvania State Police stopped Shearer and searched his car.  Trooper Eichenlaub charged Shearer with DUI and other crimes; the charges were held for court. On August 15, 2022, Shearer filed an omnibus pre-trial motion, including motions to suppress the fruits of the stop and the search.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(2) (DUI, a combination of controlled substances), 3802(d)(1)(i) (DUI, marijuana), and 35 P.S. § 780-113(a)(31)(i) (possessing a small amount of marijuana for personal use).

The suppression court heard Shearer's motion on October 4, 2022. The Commonwealth presented the testimony of Trooper Eichenlaub and introduced a video from his dashboard camera into evidence. Shearer testified on his own behalf.

On January 30, 2023, the suppression court entered an opinion and order denying Shearer's motion to suppress. The court made the following findings of fact about Trooper Eichenlaub's observations of Shearer's vehicle:

> Joshua S. Eichenlaub [has been a Pennsylvania State Police Trooper since 2017 and has prior police experience as well]. At approximately 1:03 a.m. on December 19, 2021, Trooper Eichenlaub was operating a marked State Police vehicle working a scheduled 10:00 p.m. to 6:00 a.m. shift along with Trooper Brian Kitko. At [1:03 a.m.], while traveling south on Coudersport Pike in Woodward Township, Trooper Eichenlaub [began following] a gray 2019 Honda Accord. Trooper Eichenlaub followed the Honda Accord [left onto] West Hillside Drive and then [right] on to North Allegheny Street. The vehicle then made a left turn onto Woodward Avenue and then a quick [left] turn onto [Richey] Street. Trooper Eichenlaub, while traveling behind the Honda Accord on [Richey] Street, observed that the vehicle was traveling less than 35 miles per hour and failed to signal at a proper distance. The Honda Accord then [turned left two more times, continuing] to travel in a complete circle around the block for no apparent reason. [Trooper Eichenlaub then initiated a traffic stop, where Shearer showed signs of marijuana impairment.]

Opinion, 1/30/23, at 2–4 (format altered). With respect to the ensuing search, the suppression court found as follows:

> [Shearer] told Trooper Eichenlaub on numerous occasions that he did not want him to search the vehicle but eventually consented. Trooper Eichenlaub had conducted the traffic stop for approximately twenty . . . minutes before [Shearer] gave his consent to the search of his vehicle. [In that time,] Trooper Eichenlaub had requested [Shearer's] consent on multiple occasions. Trooper Eichenlaub advised [Shearer] that if he did

- 2 -

not give consent that [Shearer's] vehicle would be towed. . . . At the time of the traffic stop it was cold outside. The Troopers provided [Shearer] with his coat. During questioning, Trooper Eichenlaub was a couple of feet in distance from [Shearer]. Trooper Kitko was further away from [Shearer]. [Shearer] was not handcuffed during the investigation. Trooper Eichenlaub was not shouting at [Shearer]. Trooper Kitko was not shouting at [Shearer. Shearer] had sufficient time to consider the request for consent to search. After numerous requests, [Shearer] advised Trooper Eichenlaub to "go ahead if you want."[2]

*Id.* at 6 (reordered, formatting altered).

Using these facts, the suppression court ruled that Trooper Eichenlaub had probable cause to stop Shearer for a turn signal violation and that Shearer gave valid consent to search his car. Accordingly, the court denied Shearer's motion to suppress.

Shearer had a non-jury trial on June 9, 2023, and the trial court found him guilty of the above crimes. On July 18, 2023, Shearer was sentenced to probation with restrictive conditions and a fine. Shearer timely appealed. Shearer and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Shearer presents two questions in this appeal:

I.      Whether the Suppression Court abused its discretion and erred as a matter of law in denying [Shearer's] motion to suppress all evidence and fruit of the poisonous tree, which was obtained as a result [of] an unlawful search and seizure since the traffic stop at issue was conducted without reasonable suspicion or probable cause?

_____

[2] The notes of testimony and the dashboard camera video reflect that 26 minutes into the stop, Shearer said: "Search (it) if you want." N.T., 10/4/22, at 30; Exh. 2 (video), at 0:27:29.

- 3 -

II.     Whether the Suppression Court abused its discretion and erred as a matter of law in denying [Shearer's] motion to suppress all evidence and fruit of the poisonous tree, which was obtained as a result of an unlawful search and seizure since any purported consent to search [Shearer's] vehicle was not knowing, intelligent, or voluntary since [Shearer] was continuously and repeatedly badgered into giving consent by two state troopers after [Shearer] unequivocally denied consent[] to search his vehicle?

Shearer's Brief at 9.

When this Court reviews the denial of a motion to suppress evidence, we follow a well-established standard:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Brown***, 281 A.3d 320, 323–24 (Pa. Super. 2022) (quoting ***Commonwealth v. Heidelberg***, 267 A.3d 492 (Pa. Super. 2021) (*en banc*)).

Shearer's first challenge is to the legality of the initial traffic stop. The Commonwealth could meet its burden by showing that, when Trooper Eichenlaub activated his lights, he had either (1) reasonable suspicion of criminal activity, requiring further investigation or (2) probable cause to believe that the driver had violated the Vehicle Code. The suppression court found probable cause that Shearer violated 75 Pa.C.S.A. § 3334(b) by

- 4 -

activating his turn signal less than 100 feet before turning. We will address reasonable suspicion instead. *See Commonwealth v. Ani*, 293 A.3d 704, 729 (Pa. Super. 2023) ("[A]s an appellate court, we may affirm on any legal basis supported by the certified record.").[3]

A traffic stop is a seizure for constitutional purposes, analogous to an investigative detention. *See Commonwealth v. Strickler*, 757 A.2d 884, 891 n.10 (Pa. 2000) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). To demand such a stop, a police officer must have at least a "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks and citation omitted). This entails an objective inquiry into "whether the facts available to police at the moment of the intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate." *Commonwealth v. Cunningham*, 287 A.3d 1, 8 (Pa. Super. 2022) (brackets and citation omitted). Unlike a stop supported by probable cause, a traffic stop based on reasonable suspicion of criminal activity "must serve a stated investigatory purpose." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*).

> [R]easonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal

---

[3] The Commonwealth has briefed this alternative justification for the stop, as it did before the suppression court. Commonwealth's Brief at 9–11; Brief, 1/18/23, at 5 (quoting Trooper Eichenlaub's summary of his suspicions).

activity was afoot and that the person he stopped was involved in that activity.

To demonstrate reasonable suspicion, the detaining officer must articulate something more than an inchoate and unparticularized suspicion or hunch. To determine whether reasonable suspicion exists, we examine the totality of the circumstances through the eyes of a trained officer and not an ordinary citizen.

*Cunningham*, 287 A.3d at 8–9 (brackets, quotation marks, and citations omitted).

An attempt to evade police is relevant in analyzing reasonable suspicion. *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super. 2009) (*en banc*) (citing *Illinois v. Wardlow*, 528 U.S. 119 (2000), and *Commonwealth v. Freeman*, 757 A.2d 903, 908 (Pa. 2000)). This could include "headlong flight" from police, *Wardlow*, 528 U.S. at 124, continually looking at police and walking away, *Foglia*, 979 A.2d at 361, crossing the street away from a police vehicle, *Cunningham*, 287 A.3d at 10, or driving on back roads to avoid known police presence, *see Arvizu*, 534 U.S. at 277. This kind of evasive behavior "is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124. Likewise, the time of day is relevant in the reasonable suspicion analysis, although time alone is not a particularized basis to suspect criminal activity. *Commonwealth v. Price*, 225 A.3d 1118, 1122 (Pa. Super. 2019) (citing *Commonwealth v. Hicks*, 208 A.3d 916, 951 (Pa. 2019)).

Here, Shearer's evasive behavior provided Trooper Eichenlaub with reasonable suspicion to initiate a traffic stop. Shearer turned several times in an apparent attempt to elude the marked police vehicle behind him, eventually

circling a block to drive down the same street he had just taken. Trooper Eichenlaub testified that based on his training and experience, he suspected that Shearer was "trying to evade being in front of" him. N.T., 10/4/22, at 40. Although there could be an innocent explanation for Shearer to circle a block at 1:00 a.m., it was reasonable for Trooper Eichenlaub to suspect that Shearer was trying to conceal criminal activity by evading the police. Therefore, Trooper Eichenlaub could lawfully stop Shearer, and the suppression court did not err in failing to suppress the stop.

Shearer's second challenge is to the ensuing search of his car. He argues that his consent was invalid, as it was based on pressure from the police. The Commonwealth bears the burden of establishing that consent is a voluntary product of free will based on the totality of the circumstances. *Strickler*, 757 A.2d at 901. Factors relevant to the consent inquiry include:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location and time of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, thus suggesting to a citizen that his movements may remain subject to police restraint; and 9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which is a potent, objective factor.

*Commonwealth v. Randolph*, 151 A.3d 170, 177 (Pa. Super. 2016) (citing *Strickler*, 757 A.2d at 898–99).

Here, the suppression court concluded that the Commonwealth proved Shearer's consent was valid:

> [Shearer's] consent was not a product of duress. Both Trooper Eichenlaub and Trooper Kitko were calm and patient with [Shearer]; Trooper Eichenlaub continued to speak with [Shearer] trying to keep [Shearer] focused to make sure [Shearer] understood what was being asked of him. [Shearer] was not restrained. Although [Shearer] was not advised that he was free to leave, [Shearer] was aware that he had the right to refuse consent. [T]here was nothing inherently coercive about the circumstances that evening. Although [Shearer] was outside of his vehicle, he was provided with his coat. Trooper Eichenlaub always kept a distance from [Shearer] and Trooper Kitko kept an even further distance from [Shearer]. . . . While the request for consent was repetitive [over approximately 26 minutes], the Court does not find it was prolonged under the circumstances.

Opinion, 1/30/23, at 9.

We agree with the suppression court. Shearer showed awareness of his right to refuse consent by denying it repeatedly while the officers continued to talk with him. The video reflects that Trooper Eichenlaub spoke with Shearer in a non-aggressive tone, accurately informing Shearer about the stop and asking questions relevant to further his investigation. Under these facts, the Commonwealth demonstrated that Shearer had given voluntary consent. Therefore, the suppression court did not err in denying Shearer's motion to suppress the fruits of the search of his car.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/20/2024